THOMAS, Judge.
In 1959, Henry Black and his wife, Effie Black, conveyed a parcel of land (“the parcel”) to A.W. Arnold and his wife, Jean B. Arnold. The deed conveyed to both A.W. and Jean an undivided one-half interest in the parcel; thus A.W. and Jean were tenants in common. In 1985, A.W. died intestate, leaving Jean as his surviving widow and seven children: Wilma Hud-gins, Sybil Hudgins, Arnold W. Arnold, Jr., Cheryl Creek, Jane Bradford, Lynn Hogan, and Gwendolyn Brady (hereinafter referred to collectively as “the children”). Pursuant to Ala.Code 1975, § 43-8^1, AW.’s property would have been divided between Jean and the couple’s seven children. The statute provides that, if the estate is worth over $50,000, the first $50,000 is left to the surviving spouse and the remaining estate is divided equally between the surviving spouse and the decedent’s children. § 43-8-41. It appears that A.W.’s estate was never probated, leaving unanswered questions regarding whether the estate was worth more or less than $50,000 and whether the parcel became Jean’s sole property or whether title to the parcel was jointly held by Jean and the children.
In February 1992, Jean and one of the children, Jane Bradford, desired to build a residence on the parcel. In order to use the parcel to secure the mortgage for the residence, Jean deeded the parcel to herself and Jane as joint tenants with the right of survivorship by warranty deed.[1] That deed was executed on February 17, 1992. On March 31, 1992, Jane and the other six children executed a quitclaim deed releasing all right, title, and interest they may have had in the parcel to Jean. Jean died intestate in July 2007.
In 2009, Gwendolyn Brady, as adminis-tratrix of Jean’s estate, sued Jane and the other children seeking to quiet title in the parcel in the estate. Jane answered the complaint and counterclaimed, seeking to have the trial court declare that she owned the parcel or, in the alternative, that she was entitled to an equitable interest in the parcel because of moneys that Jane had expended in making improvements to the parcel, in maintaining the parcel, and for taxes and mortgage payments related to the parcel and the residence on the parcel. Brady later amended her complaint, seeking to eject Jane from the parcel and seeking a judgment declaring the rights of ownership to the parcel.
At trial, Jane argued that she was the owner of the entire parcel by virtue of the intestate succession of A.W. or by virtue of the February 1992 deed based on the doctrine of after-acquired title. Brady argued that the March 1992 quitclaim deed that had been jointly executed by Jane and the other six children divested Jane of any right, title, or interest in the parcel that she had by virtue of intestate succession after A.W.’s death and any other right, title, or interest she may have acquired under the February 1992 deed from Jean. The trial court agreed that the effect of the March 1992 quitclaim deed was to divest Jane of any right, title, or interest in the property that she had had on that date and that the doctrine of after-acquired title did not apply to reinvest Jane *401 with any right, title, or interest in the parcel superior to the right, title, or interest that she acquired as an heir to Jean’s estate. Thus, the trial court concluded that Jane, like the other six children, owned an undivided one-seventh interest in the parcel. From that judgment, Jane appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
Jane maintains on appeal, as she did in the trial court, that she owns the parcel based either on the intestate succession of A.W. or on the doctrine of after-acquired title. As noted above, the evidence at trial did not reveal whether A.W.’s estate was probated and, in fact, supports the conclusion that it was not. The parties appear to have no knowledge as to whether A.W.’s estate was valued at or less than $50,000 or over $50,000, which fact would assist greatly in the determination whether, after A.W.’s death, title to the parcel was vested solely in Jean or whether Jean and the children held various undivided interests in the parcel. In any event, regardless of whether Jean received undivided title to the parcel or whether the title was held jointly by Jean and the children upon A.W.’s death, Jane’s argument that she is the sole owner of the parcel fails.
As explained above, in March 1992 Jane and the other six children executed a quitclaim deed in which they disclaimed all right, title, and interest in the parcel. A quitclaim deed conveys nothing more than what the grantor owns; however, to the extent the grantor holds good title to the property, a quitclaim deed is just as effective as a warranty deed to pass that title. Reid v. Southeastern Materials, Inc., 396 So.2d 667, 670 (Ala.1981). If, as Jane claims, Jean alone owned the parcel in February 1992 (before executing the February 1992 deed), then Jane would have had an undivided one-half interest in the parcel, as a joint tenant with Jean, and a survivorship interest in Jean’s one-half interest in the parcel by virtue of the February 1992 deed at the time she executed the quitclaim deed in March 1992. By executing that quitclaim deed, Jane would have relinquished the right, title, and interest she had acquired in the parcel by virtue of the February 1992 deed. Thus, as the trial court concluded, Jane would not have held any interest in the parcel after the March 1992 quitclaim deed.
Likewise, even had Jean not held sole title to the parcel and had Jane and the other children each held some undivided interest in the parcel as a result of intestate succession, the March 1992 quitclaim deed would have served to extinguish that interest in Jane and the other children and any other interest Jane might have acquired by virtue of the February 1992 deed. Simply put, by virtue of the operation of the March 1992 quitclaim deed, Jane no longer had any interest in the parcel after March 31, 1992. We conclude, therefore, that the trial court’s determination that Jane did not hold a superior title to the parcel by virtue of intestate succession is correct.
Jane’s argument that the doctrine of after-acquired title operates to vest title in the parcel solely in her meets the same fate. She argues that the doctrine applies in this case to cause the March 1992 quitclaim deed to cure any defects in Jean’s title at the time of the execution of the February 1992 deed to Jean and Jane and, thus, that title to the parcel vested entirely in Jane on Jean’s death by virtue of the survivorship provisions in the February 1992 deed. We agree with the trial court that the doctrine has no application here.
The doctrine of after-acquired title is well established. See Kelley v. Kelley, 435 So.2d 214 (Ala.1983); Cobbs v. Union *402 Naval Stores Co., 202 Ala. 333, 80 So. 415 (1918); State v. Mobile & Ohio R.R., 201 Ala. 271, 78 So. 47 (1918); and Schaeffer v. Maddox, 794 So.2d 1139 (Ala.Civ.App.2000). The doctrine has often been described as operating by estoppel. Dominex, Inc. v. Key, 456 So.2d 1047, 1058 (Ala.1984) (“The chief theory upon which the doctrine rests is that the deed operates on the after-acquired title by way of an estoppel.”); Schaeffer, 794 So.2d at 1143 (quoting Harkins & Co. v. Lewis, 535 So.2d 104, 113 (Ala.1988)) (indicating that the doctrine operates “ ‘by way of estop-pel’ ”).
“It operates to estop a grantor, who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of the conveyance, from claiming in opposition to the deed as against the grantee or any person claiming title under him, when such grantor afterward acquires good title to the land.”
Dominex, Inc., 456 So.2d at 1058.
Jane argues that, if Jean did not have good and sole title to the parcel in February 1992 (before executing the February 1992 deed), the March 1992 quitclaim deed executed by Jane and the other children operated, under the doctrine, to grant Jean and Jane perfected title under the February 1992 deed by the relinquishment of all other interests that may have prevented perfect title in Jean at the time the February 1992 deed was executed. Jane bases her argument on her assertions that the March 1992 quitclaim deed had as its purpose to clear Jean’s title to the parcel as part of the set of circumstances leading to the execution of the mortgage on the parcel to secure the loan for the residence that Jean and Jane built on the parcel. Jane relies on the principle that whether the doctrine applies “hinges on exactly what interests [Jean] intended to convey [in the February 1992 deed], and, in fact, conveyed by that instrument.” Harkins & Co. v. Lewis, 535 So.2d at 114. Our supreme court indicated that, if the deed was ambiguous, the trial court could “look[] beyond the ‘four corners’ of the instrument in order to discern the intent of the grantors.” Lewis, 535 So.2d at 114. Thus, Jane says, the fact that the March 1992 quitclaim deed was, according to Jane, intended to clear up Jean’s title should result in the application of the doctrine of after-acquired title in the present case. Certainly, although Jane’s explanation of the circumstances surrounding the execution of the February 1992 deed and the execution of the March 1992 quitclaim deed is plausible, the timing of the two deeds was such that, even if the March 1992 quitclaim deed had been intended to clear any impediments to perfect title in Jean so that she could convey the parcel to herself and Jane as joint tenants with rights of survivorship, it failed to do so.
This is so because “[t]he doctrine whereby a deed may operate to pass an after-acquired title applies only where the acquisition is of a title outstanding and adversely held and not to one subsequently acquired from the grantee of the prior deed.” Bailey v. Selden, 124 Ala. 403, 408, 26 So. 909, 912 (1899). Thus, Jane’s actions as a grantor of the March 1992 quitclaim deed (the subsequent deed in this scenario) in relinquishing any right, title, or interest that might have existed in her by virtue of intestate succession could not have perfected Jean’s title so that Jane, as grantee of the February 1992 deed (the prior deed in this scenario), could have acquired perfected title from Jean. In addition, the effect of the March 1992 quitclaim deed, as noted above, was to relinquish all Jane’s right, title, and interest in the parcel that existed at the time of the execution of the March 1992 quitclaim *403 deed; thus, it would also have served to relinquish any right, title, or interest Jane may have acquired under the February 1992 deed, even had Jean’s title been perfected by the March 1992 quitclaim deed by virtue of the application of the doctrine. Thus, Jane’s argument fails, and the March 1992 quitclaim deed and the February 1992 deed do not accomplish what Jane believes they do.
The trial court correctly concluded that Jane did not solely own the parcel under either theory she advanced. Thus, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The deed encompassed an adjoining parcel of property; however, the ownership of that parcel is not in dispute and is not an issue in this appeal.